UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DEER OAKS OFFICE PARK** § | | |
| **OWNERS ASSOCIATION,** § | | |
| § | CIVIL ACTION NO. | |
| **Plaintiff,** § | | |
| v. § | SA-11-CV-0214 NN | |
| § | | |
| **STATE FARM LLOYDS,** § | | |
| § | | |
| **Defendant.** § | | |

## ORDER GRANTING SUMMARY JUDGMENT

This order addresses the pending motions for summary judgment. This court has jurisdiction over this case under 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000. I have jurisdiction to adjudicate this dispute because the parties consented to the magistrate judge's jurisdiction.[1] After considering the motions, the summary-judgment record, and the applicable law, I grant summary judgment in favor of defendant State Farm Lloyds.

**Nature of the case.** This case arose from a dispute between an insured and its insurer. The insured—plaintiff Deer Oaks Office Park Owners Association (Office Park)—sued its insurer—State Farm Lloyds (State Farm)—complaining that State Farm failed to defend Office Park in a state-court lawsuit. Office Park asked the court to

---

[1]Docket entry # 6.

declare that State Farm is obligated under its insurance policy to defend Office Park. Office Park also alleged that State Farm breached the insurance policy and violated the Texas Insurance Code in denying coverage.

**Background of this case**.  Office Park is "an office park condo association which owns, maintains and regulates the 'common areas' between fifteen unconnected office condos"[2] located at 7272 Wurzbach, San Antonio, Texas.  In the summer of 2007, Dr. Thomas Jeneby, as an owner and operator of Palm Tree Holdings, LLC (Palm Tree), sought to purchase one of the office-condo buildings at 7272 Wurzbach—building 8. Jeneby planned to practice medicine from the ground floor of the building and lease the second floor to other medical providers.  The installation of an elevator for patient access was important to Jeneby's plans for the second floor as some patients are unable to navigate stairs.

Despite the importance of the elevator, Jeneby purchased building 8 without Office Park's approval of the installation of an elevator.  After purchasing the building, Jeneby encountered problems with building maintenance.  Unable to obtain permission to install an elevator, and unhappy with property maintenance, Jeneby acted on behalf of Palm Tree and sued Office Park in state court.[3]  Palm Tree complained that although

---

[2]Docket entry # 1, attached complaint, ¶ 6.

[3]Docket entry # 12, ex. 2A.

Jeneby was direct and forthright about the need for an elevator, Office Park misrepresented what was needed to install an elevator, failed to repair and maintain Jeneby's building, and asked the state trial court to declare that Office Park lacked a legal basis to deny the installation of an elevator.

When Office Park contacted State Farm about the lawsuit, State Farm refused to defend Office Park.  This lawsuit followed.  Both Office Park and State Farm have moved for summary judgment.

Office Park seeks partial summary judgment on its request for declaratory judgment that State Farm is obligated to defend Office Park in Palm Tree's lawsuit.[4] State Farm seeks summary judgment on Office Park's request for declaratory judgment, Office Park's claim that State Farm breached the insurance policy, and the claim about a violation of the insurance code.[5]  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]

**The insurance policy**.  The insurance policy at the center of this dispute is a condominium/association insurance policy, covering the time period January 30, 2010 to

---

[4]Docket entry # 18, p. 1.

[5]Docket entry # 12, p. 2.

[6]Fed. R. Civ. P. 56(a).

January 30, 2011.  The policy includes a directors-and-officers endorsement obligating State Farm to defend and indemnify Office Park for any claims or suits for damages arising out of allegedly wrongful acts committed by Office Park's directors and officers.[7] Because Palm Tree alleged negligence and negligent misrepresentation by Office Park's officers and directors,[8] Office Park sought representation under the directors-and-officers endorsement.

The directors-and-officers endorsement extended to any acts committed before the coverage period,[9] so long as Office Park did not have notice of a claim or suit before the policy became effective.[10]  This latter point is where the parties disagree.  The parties agree that Palm Tree complained about conduct that occurred before the

---

[7]Docket entry # 12, ex. 1, p. 24 of the policy (imaged in CM-ECF as p. 57) ("We will pay those sums that the insured becomes legally obligated to pay as damages, because of 'wrongful acts' committed by an insured solely in the conduct of their management responsibilities for the Condominium/Association.").

[8]Docket entry # 12, ex. 2A, Palm Tree's original petition in the state-court lawsuit (imaged in CM-ECF as pp. 74-87).

[9]Docket entry # 12, ex. 1, directors and officers amendatory endorsement (imaged in CM-ECF as p. 33) (defining "occurrence" as "a '**wrongful act**,' including any related conduct, *during the policy period*, which results in a claim made in writing or **suit** filed") (italics added).

[10]Docket entry # 12, ex. 1, directors and officers optional coverage (imaged in CM-ECF as p. 57) (stating that the directors-and-officers coverage "applies to 'wrongful acts' committed before this optional coverage became effective *if the insured had no knowledge of a claim or suit at the effective date of this option* and there is no other applicable insurance") (italics added).

directors-and-officers coverage became effective on January 30, 2010, and that Palm Tree filed suit after the policy became effective, but disagree about whether Office Park had notice of Palm Tree's claims before the insurance policy became effective.  Office Park maintains that it had no notice of Palm Tree's claims before the policy's effective date.  State Farm maintains Office Park had notice of Palm Tree's claims before the effective date.

**Applicable legal principles**.  Because this is a diversity case, Texas substantive law applies.[11]  In Texas, Office Park as "the insured has the burden of establishing coverage under the terms of the policy."[12]  State Farm supported its motion with a letter to show Office Park had notice of Palm Tree's claims before the policy effective date.[13]  Based on the letter, State Farm argued that Office Park cannot meet its burden.

To preclude summary judgment, Office Park must raise a fact question about whether it had notice of Palm Tree's claim before the policy effective date.  Office Park did not rely on a fact question, but instead argued that the letter proves that it did not

---

[11] *See Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 328 (5th Cir. 2001) ("Under the *Erie* doctrine, [federal courts] are bound in diversity cases to apply the substantive law of the forum state as interpreted by the state's highest court.").

[12] *Gilbert Tex. Constr. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). *See Ryan*, 274 F.3d at 324 (explaining in a dispute about an insurer's duty to defend, that in Texas, the insured must show that claim against him is potentially within his policy's coverage).

[13] Docket entry # 12, ex. 2B (imaged in CM-ECF as pp. 99-101).

have notice.

**Whether the letter constitutes notice**.  The letter was authored by Jeneby's attorney, addressed to Office Park's attorney, and dated September 23, 2009—before the policy effective date.  The letter traced Jeneby's multiple complaints about Office Park and attributed monetary losses to Office Park.  In response to State Farm's argument that the letter constituted notice of Palm Tree's claim, Office Park argued that the letter did not constitute notice because the letter did not demand money.  Emphasizing that the policy does not define "claim," Office Park relied on Fifth Circuit case law about the meaning of "claim."

In the relevant opinion, the Fifth Circuit instructed that, "Whether an insurance contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."[14]  The Fifth Circuit explained that, "When a contract is reasonably susceptible of more than one meaning,…it is ambiguous and a court should adopt a construction that favors the insured."[15]  In applying these rules to the meaning of "claim," the Fifth Circuit stated the following about the meaning of "claim":

> Standing alone, the term "claim" is susceptible of more than one meaning. Lawyers commonly use "claim" as a noun in at least three different senses:

---

[14] *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005).

[15] *Int'l Ins. Co.*, 426 F.3d at 291.

> (1) The aggregate of operative facts giving rise to a right enforceable by a court; (2) The assertion of an existing right, such as a right to payment or to an equitable remedy; (3) A demand for money, property, or a legal remedy.  Lay persons also use "claim" as a noun having more than one meaning: (1) A demand for something due or believed to be due; (2) A right to something, such as a title to a debt, privilege or thing in the possession of another; (3) An assertion open to challenge.  The [disputed] policy does not expressly or by implication specify which meaning is intended. Consequently, the policy itself is also susceptible of more than one interpretation.[16]

Relying the foregoing authority, Office Park argued that under circumstances of this case, "claim" means "a demand for money, property, or legal remedy."  Because the letter did not explicitly demand money, property, or a legal remedy, Office Park argued that the letter did not constitute notice of Palm Tree's claims.  Office Park's use of available case law is resourceful, but the argument fails.

In the relevant opinion, the Fifth Circuit "construe[d] the ambiguous noun 'claim' using its ordinary meaning that is most favorable to the insured in th[e] case, that is, as the "assertion of a right" to hold the insured liable," explaining "[t]his is essentially the meaning that the district court adopted when it defined 'claim' in the jury charge as 'an assertion by a third party, that in the opinion of the third party, the insured is liable to it for damages within the risks covered by the policy[.]'"[17] Construing "claim" to mean "the assertion of a right to hold the insured liable" favors

---

[16] *Int'l Ins. Co.*, 426 F.3d at 291.

[17] *Int'l Ins. Co.*, 426 F.3d at 292.

the insured because the construction gives the insured the right to seek coverage without waiting for the filing of a lawsuit. Under this construction, "[v]irtually any assertion of exposure to liability within the risk covered by an insurance policy is a claim, unless the assertion is made in circumstances so unusual that they negate possibility of formal proceeding involving defense costs as well as liability."[18] The construction favors Office Park as the insured because the policy did not require Office Park to wait until Palm Tree filed a lawsuit to seek coverage. Instead, the policy permitted Office Park to seek coverage for any assertion of exposure to liability within the risk covered by the insurance policy.

Applying the same construction here, the letter constituted notice of Palm Tree's claims because it asserted the right to install an elevator, recoup loss rental income, and obtain reimbursement for repair costs. The letter began with: "On behalf of my client I am reiterating his demands." The use of the word "demand' placed Office Park on notice that Jeneby asserted a right.

The letter summarized Jeneby's complaints about Office Park's failure to approve the installation of an elevator in building 8 and his complaints about building maintenance. The letter stated that Jeneby "is adamant that he bought this building in reliance of the fact that he would be allowed to install an elevator, just as Dr. Patterson

---

[18]*Int'l Ins. Co.*, 426 F.3d at 292 (quoting *Couch on Insurance* § 191.10 (3d ed. 2000)).

and Dr. Larson were approved for and encouraged to do." The letter complained that Office Park's president "reversed herself on two occasions—indicating that Dr. Larson (a board member) was approved for an elevator because he was going to place the elevator out of sight (in a stairwell) and then out of sight (between the buildings)." The letter characterized the president as "confused and…obviously stalling." The letter reported that Palm Tree had "documented prospective tenants who have expressed an interest but could not proceed due to elderly clients needing elevator access" and complained about lost rental income.

    The letter also complained about numerous maintenance problems, Jeneby's lost income when sewer pipes burst, Jeneby's expenses to repair common areas, and Office Park's delay in approving maintenance. The letter summarized Jeneby's position:

> This back and forth has been going on for almost two years with expenses and loss of business continuing to increase. My client does not have the option of relenting, he has invested too much time and capital in his business, and he is not going to relent. He has asked me to pursue litigation in this matter if a satisfactory settlement on these issues can not be reached.

    The letter concluded with, "If I have not heard a response back from your client by October 2, 2009, then my client has instructed me to file suit in District Court."

    The only reasonable interpretation of the letter is that Palm Tree asserted a right to hold Office Park liable for all of the costs Jeneby had spent and lost because of Office Park's acts. The letter's bottom line was: If you do not comply with my demands, I will


and Dr. Larson were approved for and encouraged to do." The letter complained that Office Park's president "reversed herself on two occasions—indicating that Dr. Larson (a board member) was approved for an elevator because he was going to place the elevator out of sight (in a stairwell) and then out of sight (between the buildings)." The letter characterized the president as "confused and…obviously stalling." The letter reported that Palm Tree had "documented prospective tenants who have expressed an interest but could not proceed due to elderly clients needing elevator access" and complained about lost rental income.

The letter also complained about numerous maintenance problems, Jeneby's lost income when sewer pipes burst, Jeneby's expenses to repair common areas, and Office Park's delay in approving maintenance. The letter summarized Jeneby's position:

> This back and forth has been going on for almost two years with expenses and loss of business continuing to increase. My client does not have the option of relenting, he has invested too much time and capital in his business, and he is not going to relent. He has asked me to pursue litigation in this matter if a satisfactory settlement on these issues can not be reached.

The letter concluded with, "If I have not heard a response back from your client by October 2, 2009, then my client has instructed me to file suit in District Court."

The only reasonable interpretation of the letter is that Palm Tree asserted a right to hold Office Park liable for all of the costs Jeneby had spent and lost because of Office Park's acts. The letter's bottom line was: If you do not comply with my demands, I will

sue you.  Under any construction, the letter constituted a claim.

The letter constituted notice.  Palm Tree gave Office Park notice on September 23, 2009—before the effective date of the policy.  Because Office Park had notice before the effective date of the policy, the claim fell outside of the policy and State Farm had no duty to defend Office Park.  For this reason, State Farm is entitled to summary judgment on Office Park's claim for declaratory judgment.

Having determined that State Farm had no duty to defend Office Park, no basis exists for Office Park's claims about breaching the insurance policy or violating the Texas Insurance Code by denying coverage.  State Farm is entitled to summary judgment on those claims as well.  Accordingly, I grant State Farm's motion (docket entry # 12) and deny Office Park's motion (docket entry # 18).

**SIGNED** on February 15, 2012.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE